Jonathan D. Baker (State Bar No. 196062)
jdbaker@dickinsonwright.com
Dino Hadzibegovic (State Bar No. 267489)
dhadzibegovic@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone:  (408) 701-6100
Facsimile:  (844) 670-6009

Donald R. McPhail (to be admitted *pro hac vice*)
dmcphail@dickinsonwright.com
Stanislav Torgovitsky (to be admitted *pro hac vice*)
storgovitsky@dickinson-wright.com
Shih-Ching (Evi) Li (to be admitted *pro hac vice*)
eli@dickingson-wright.com
DICKINSON WRIGHT PLLC
1825 Eye Street, N.W., Suite 900
Washington, DC 20006
Telephone: (202) 457-0160
Facsimile: (844) 670-6009

*Attorneys for Plaintiffs*,
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA and TiMEMS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and TiMEMS, INC., a California corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>LTI FLEXIBLE PRODUCTS, INC. d/b/a BOYD CORPORATION, a Minnesota Corporation,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR: (i) PATENT INFRINGEMENT; (ii) DECLARATORY JUDGMENT; (iii) UNJUST ENRICHMENT; AND (iv) RECISSION OF ASSIGNMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Case No.
COMPLAINT FOR PATENT INFRINGEMENT, DECLARATORY JUDGMENT,
UNJUST ENRICHMENT AND RECISSION OF ASSIGNMENT

1

Plaintiffs THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ("THE REGENTS") and TiMEMS, INC. ("TiMEMS"), by and through their attorneys, file this Complaint for: (i) PATENT INFRINGEMENT; (ii) DECLARATORY JUDGMENT; (iii) UNJUST ENRICHMENT AND (iv) RECISSION OF ASSIGNMENT against Defendant LTI FLEXIBLE PRODUCTS, INC. d/b/a BOYD CORPORATION ("Boyd"), and allege as follows:

## THE PARTIES

1. The University of California, Santa Barbara ("UCSB") is an internationally recognized pioneering research institution and one of the ten campuses that make up the University of California system. At all times herein mentioned, The Regents were charged by state law with the duty of administering the University of California, including UCSB, as a public trust, pursuant to Article IX ¶ 9 of the California Constitution.

2. Plaintiff The Regents constitute the governing board of the University of California system, which includes UCSB. There are 26 voting members of The Regents, which have full powers of organization and governance over the University of California system, including UCSB.

3. The responsibility of an individual who serves as one of The Regents is to act as a trustee for the people of the State of California and as a steward of the University of California, acting to govern the University as a public trust in fulfillment of its educational, research, and public service missions in the best interests of the people of California.

4. Among The Regents' responsibilities is the oversight of expenditures and appropriation of funds. As such, The Regents are responsible for approving the use of the University of California's substantial research resources.

5. UCSB proudly counts among its faculty six Nobel Laureates, 29 members of the National Academy of Engineering, 34 members of the American Academy of Arts and Sciences, more than 60 Guggenheim Fellows and more than 80 members of the American Association for the Advancement of Science. UCSB is one of only 62 research-intensive institutions in the United

States and Canada elected to the Association of American Universities. UCSB currently ranks #8 among all public universities in U.S. News & World Report's "Best Colleges" guide.

6. UCSB is also the home of a world-renowned Department of Mechanical Engineering that is dedicated to developing completely new cross-cutting fields of science and engineering related to topics such as: microscale engineering and MEMS (microelectrical-micromechanical systems); dynamics and controls and related areas of sensors, actuators and instrumentation; advanced composite materials and smart structures; computation, simulation and information science; advanced energy and transportation systems; and environmental monitoring, modeling and remediation. UCSB's Department of Mechanical Engineering collaborates with seven separate affiliated research centers, including the California NanoSystems Institute ("CNSI"), the Materials Research Laboratory, the Center for Risk Study and Safety, the Institute for Theoretical Physics, the Center for Stem Cell Biology and Engineering, the Technology Management Program and the Center for Control, Dynamical Systems and Computation. UCSB's Department of Mechanical Engineering has consistently ranked among the top in the nation in various studies, including those conducted by the National Research Council and U.S. News & World Report.

7. Plaintiff TiMEMS is a corporation organized and existing under the laws of the State of California. TiMEMS has a principal place of business at 2050 Via Veneto, Camarillo, CA 93010.

8. TiMEMS is a research and development entity investigating and developing new and improved titanium microstructures, including titanium MEMS and titanium thermal ground planes ("TGPs"; also known as "titanium vapor chambers"). TiMEMS is the exclusive licensee of The Regents' rights in certain United States Letters Patents directed to titanium MEMS and titanium TGPs.

9. On information and belief, Defendant is a corporation organized and existing under the laws of the State of Minnesota and having a principal place of business at 5960 Inglewood Drive, Suite 115, Pleasanton, CA 94588.

**JURISDICTION AND VENUE**

10. This is an action for Patent Infringement and for a Declaratory Judgment that The Regents own all right, title and interest in certain United States Letters Patents. This action therefore involves questions arising under the patent laws of the United States, Title 35 United States Code § 100 *et seq*. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). This Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

11. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship and the requisite jurisdictional amount. The amount in controversy herein exceeds seventy-five thousand United States dollars ($75,000.00), exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendant. On information and belief, Defendant maintains a regular and established place of business in this judicial district. In addition, Defendant has sufficient minimum contacts with this judicial district. On information and belief, Defendant sells, offers for sale, advertises, makes available and/or markets products and/or services within the State of California and this judicial district. The exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b)-(c) because Defendant resides in this judicial district by virtue of maintaining a place of business at 5960 Inglewood Drive, Suite 115, Pleasanton, CA 94588. Venue is also proper in this Court under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this judicial district and maintains a regular and established place of business in this judicial district.

**INTRADISTRICT ASSIGNMENT**

14. This case involves Intellectual Property Rights and so is subject to assignment on a district-wide basis pursuant to Civil L.R. 3.2(c).

Case No.
COMPLAINT FOR PATENT INFRINGEMENT, DECLARATORY JUDGMENT,
UNJUST ENRICHMENT AND RECISSION OF ASSIGNMENT
4

## FACTUAL BACKGROUND

15. On information and belief, between 2006 and 2010, Payam Bozorgi ("Bozorgi") was enrolled in the Doctor of Philosophy program offered by the Department of Mechanical Engineering at UCSB. As described in his dissertation, Bozorgi's research was directed to packaging for MEMS (micro electromechanical systems).

16. MEMS packaging serve to integrate all of the components required for a system application in a manner that minimizes size, cost, mass and complexity. The three main functions of MEMS packaging are to provide mechanical support, to protect MEMS from the environment; and to establish electrical connection(s) to other system components.

17. As a part of his research while he was enrolled in the Ph.D. program, Bozorgi participated in research projects with other members of UCSB's Department of Mechanical Engineering. These research projects included: (i) developing pulsed laser welding as a technique for fabricating MEMS packaging; and (ii) developing a titanium thermal ground plane ("TGP"; also known as a "titanium vapor chamber") for cooling applications.

18. While he was enrolled in the Ph.D. program, Bozorgi was subject to and, on information and belief, signed UCSB's Patent Acknowledgement.

19. UCSB's Patent Acknowledgement obliges those subject to it "to assign . . . inventions and patents that I conceive or develop . . . 2) during the course of my utilization of any University research facilities, or 3) through any connection with my use of gift, grant, or contract research funds received through the University."  UCSB's Patent Acknowledgement further obliges those subject to it "to promptly report and fully disclose the conception and/or reduction to practice of potentially patentable inventions to the University authorized licensing office."  These obligations applied to Bozorgi.

20. On July 21, 2008, while Bozorgi was enrolled in the Ph.D. program, U.S. Provisional Application No. 61/082,437 ("the '437 provisional"), entitled "Titanium-Based Thermal Ground Plane," was filed at the U.S. Patent & Trademark Office. The '437 provisional named Noel MacDonald, Carl Meinhart, Changong Ding, Payam Bozorgi, Gaurav Soni and Brian Piorek as joint inventors.

Case No.
COMPLAINT FOR PATENT INFRINGEMENT, DECLARATORY JUDGMENT, UNJUST ENRICHMENT AND RECISSION OF ASSIGNMENT

5

21. On July 21, 2009, while Bozorgi was enrolled in the Ph.D. program, PCT No. PCT/US2009/051285 ("the '285 PCT application"), entitled "Titanium-Based Thermal Ground Plane," was filed. The '285 PCT application identified The Regents as the applicant and named Noel MacDonald, Carl Meinhart, Changong Ding, Payam Bozorgi, Gaurav Soni and Brian Piorek as joint inventors. The '285 PCT application claims priority from the '437 provisional. As required by UCSB's Patent Acknowledgement, Bozorgi assigned his rights in the '285 PCT application to The Regents.

22. Following completion of the requirements for the Ph.D. program in 2010, Bozorgi was employed by UCSB as a researcher.

23. As an employee of UCSB, Bozorgi was subject to and, on information and belief, signed UCSB's Patent Acknowledgement.

24. While employed as a researcher by UCSB, Bozorgi participated in research projects with other members of UCSB's Department of Mechanical Engineering. These research projects included: (i) developing pulsed laser welding as a technique for fabricating MEMS packaging; and (ii) developing a titanium thermal ground plane (TGP) for cooling applications, including cooling for portable electronics devices.

25. Between 2010 and 2014, while Bozorgi was employed by UCSB as a researcher, several applications for patents in the United States and abroad were filed that named Bozorgi as a joint inventor and claim the use of pulsed laser welding as technique for fabricating MEMS packaging and/or a TGP useful for cooling applications. The applications and the patents that have issued therefrom include:

(a) United States Letters Patent No. 9,688,533 ("the '533 patent"), entitled "Using Millisecond Pulsed Laser Welding in MEMS Packaging," issued on June 27, 2017 and named Payam Bozorgi and Noel MacDonald as joint inventors. The '533 patent issued from U.S. Patent Application No. 13/982,427, which was filed on January 21, 2014 as a United States national stage entry of PCT No. PCT/US2012/023303, which was filed on January 31, 2012 and claims priority from U.S. Provisional Application No. 61/437,936, which was filed on January 31,

2011.  As required by UCSB's Patent Acknowledgement, Bozorgi assigned his rights in the '533 patent to The Regents.

   (b)  United States Letters Patent No. 8,807,203 ("the '203 patent"), entitled "Titanium-Based Thermal Ground Plane," issued on August 19, 2014 and named Noel MacDonald, Carl Meinhart, Changong Ding, Payam Bozorgi, Gaurav Soni and Brian Piorek as joint inventors.  The '203 patent issued from U.S. Patent Application No. 13/055,111 ("the '111 application"), which was filed on June 20, 2011 as a United States national stage entry of the '285 PCT application.  As required by UCSB's Patent Acknowledgement, Bozorgi assigned his rights in the '285 PCT application and any legal equivalent thereof, such as the '203 patent, to The Regents.

   (c)  United States Patent Application No. 13/685,579 ("the '579 application"), entitled "Titanium-Based Thermal Ground Plane," was filed on November 26, 2012 and named Payam Bozorgi, Carl Meinhart, Marin Sigurdson, Noel MacDonald, David Bothman and Yu-Wei Liu as joint inventors.  The '579 application claims priority from U.S. Provisional Application No. 61/563,733, which was filed on November 25, 2011.  On information and belief, the '579 application is currently pending at the U.S. Patent & Trademark Office.  As required by UCSB's Patent Acknowledgement, Bozorgi assigned his rights in the '579 application to The Regents.

  26.  On information and belief, on or about August 29, 2012, while employed as a researcher by UCSB, Bozorgi and others founded PiMEMS, Inc. ("PiMEMS"), a corporation organized under the laws of the State of Delaware.

  27.  On information and belief, on or about May 31, 2014, Bozorgi resigned his position as a salaried researcher at UCSB.  Between June 1, 2014 and May 31, 2015, Bozorgi had a zero percent time university appointment at UCSB, ostensibly to permit him to access UCSB's library in order to publish his previous research, but not to perform new research at UCSB.

  28.  Nevertheless, during his zero percent time university appointment at UCSB, Bozorgi continued to use UCSB facilities to perform research on Ti-TGPs for cooling

applications, including using a millisecond Nd:YAG pulsed laser welder that UCSB had purchased in 2009.

29. As a user of UCSB's facilities, Bozorgi was subject to and bound by UCSB's Patent Acknowledgement.

30. Following his resignation as a salaried researcher at UCSB in May, 2014, on information and belief, Bozorgi filed, or caused to be filed, a number of patent applications in the United States and abroad that named Bozorgi as either a joint inventor or the sole inventor and claim a TGP useful for cooling applications. The applications and the patents that have issued therefrom include:

    (a) United States Letters Patent No. 10,458,719 ("the '719 patent"), entitled "High Performance Two-Phase Cooling Apparatus," issued on October 29, 2019 and named Payam Bozorgi and Carl Meinhart as joint inventors. The '719 patent issued from U.S. Patent Application No. 15/000,460 ("the '460 application"), which was filed on January 19, 2016 and claimed priority from U.S. Provisional Application No. 62/106,556 ("the '556 provisional"), which was filed on January 22, 2015. On information and belief, Bozorgi assigned his rights in the '460 application solely to PiMEMS. Meinhart assigned his rights to The Regents.

    (b) United States Patent Letters Patent No. 10,670,352 ("the '352 patent"), entitled "High Performance Two-Phase Cooling Apparatus for Mobile Applications," issued on June 2, 2020 and named Payam Bozorgi as the sole inventor. The '352 patent issued from U.S. Patent Application No. 15/590,621 ("the '621 application"), which was filed on May 9, 2017 and claimed priority from U.S. Provisional Application No. 62/340,308 ("the '308 provisional"), which was filed on May 23, 2016. On information and belief, Bozorgi assigned his rights in the '621 application solely to PiMEMS and PiMEMS subsequently assigned its rights to Defendant on August 8, 2019.

31. A comparison of original claim 1 of the '111 application, which was filed on June 20, 2011 and properly assigned to The Regents, with original claim 1 of the '460 application, which was filed on January 19, 2016 but assigned to PiMEMS by Bozorgi, is provided below:

| The '111 application | The '460 application |
|---|---|
| 1. A thermal ground plane, comprising: | 1. A thermal ground plane, comprising: |
| a titanium substrate comprising a plurality of pillars, forming a wicking structure; | a metal substrate comprising a plurality of microstructures, forming a wicking structure; |
| a vapor cavity, in communication with the plurality of titanium pillars; | a vapor cavity, in communication with the plurality of microstructures; |
|  | at least one intermediate substrate shaped to increase the effective aspect ratio of the wicking structure in at least one region of the wicking structure; |
| and a fluid contained within the wicking structure and vapor cavity for transporting thermal energy from one region of the thermal ground plane to another region of the thermal ground plane, wherein the fluid is driven by capillary forces within the wicking structure. | and a fluid contained within the thermal ground plane for transporting thermal energy from at least one region of the thermal ground plane to another region of the thermal ground plane, wherein the fluid is driven by capillary forces. |

32. Despite the fact that the '460 application related to the same technical subject matter, thermal ground planes, as patents and patent applications previously assigned to The Regents by Bozorgi, including the '111 application and the '203 patent, on information and belief, Bozorgi assigned his rights in the '460 application to PiMEMS.

33. On information and belief, on or about January 20, 2015, Bozorgi and co-inventor Carl Meinhart submitted a "Request for Title Clearance: Disclosure and Record of Invention Form" (the 'Title Clearance") to UCSB's Office of Technology and Industry Alliances ("OTIA") for an Invention titled "High-Performance Two-Phase Cooling Apparatus." On information and belief, a draft of the '556 provisional was attached to the Title Clearance.

34. The Title Clearance alleged that the subject matter of the '556 provisional was conceived on June 24, 2014 and conceptually reduced to practice on August 1, 2014. The Title Clearance alleged that a specific embodiment of the subject matter of the '556 provisional was microfabricated on September 2, 2014 and tested on December 16, 2014.

35. The Title Clearance admitted that the subject matter of the '556 provisional "is an improvement on the licensed UC technology," but falsely stated that it "was developed exclusively at PiMEMS, Inc., using exclusively PiMEMS' resources." The Title Clearance further falsely stated that "[t]he invention was funded exclusively by PiMEMS' internal funding and built exclusively using facilities rented by PiMEMS. There were no UC facilities or resources used during the conception or reduction to practice."

36. Contrary to his statements in the Title Clearance, however, Bozorgi used UCSB's pulsed laser welder to fabricate Ti-TGPs on multiple occasions between May 31, 2014, when he resigned his position as a salaried researcher, and January 3, 2015. Contrary to his statements in the Title Clearance, on information and belief, Bozorgi fabricated TGP's within the scope of the claims of the '556 provisional using UCSB's pulsed laser welder, on at least the following dates: September 4, 5, 6, 7, 9, and 28, 2014; November 23, 26, 27, and 30, 2014; and December 1, 14, 15, 22, and 23, 2014.

37. Based, at least in part, on Bozorgi's false statements in the Title Clearance and in subsequent correspondence relating thereto, by letter dated September 20, 2017 from Sherylle Mills Englander, Director of OTIA at UCSB, The Regents declined to waive their ownership rights in the '556 provisional and, instead, elected to assert sole ownership of the '556 provisional and any application or patent, foreign or domestic, relating to the '556 provisional. PiMEMS was, however, offered a license to the '460 application. PiMEMS did not accept this offer.

38. On information and belief, Bozorgi failed to fulfill his obligations under UCSB's Patent Acknowledgement with respect to the '556 provisional.

39. The '621 application claims a portable device which includes: (i) a thermal ground plane comprising a vapor cavity (having a vapor region and a liquid region for a working fluid) and a wicking structure on a metal substrate; and (ii) an integrated circuit chip.

40. Despite the fact that the '621 application relates to the same technical subject matter, thermal ground planes, as patents and patent applications previously assigned to The

Regents by Bozorgi, including the '111 application and the '203 patent, on information and belief, Bozorgi assigned his rights in the '621 application to PiMEMS.

41. On information and belief, Bozorgi did not submit a "Request for Title Clearance: Disclosure and Record of Invention Form" for the '621 application to OTIA at UCSB.

42. On information and belief, Bozorgi failed to fulfill his obligations under UCSB's Patent Acknowledgement with respect to the '621 application.

43. On information and belief, PiMEMS was commercially successful and at least a portion of that success was attributable to the technology disclosed and claimed in the '556 provisional and the applications that claim priority therefrom.

44. On information and belief, Defendant acquired PiMEMS on or around April 4, 2019.

45. A true and correct copy of the '719 patent is attached hereto as Exhibit A.

46. Claim 1 of the '719 patent reads:

> 1. A thermal ground plane, comprising:
> a metal substrate comprising a plurality of microstructures formed in the metal substrate, forming a wicking structure having the plurality of microstructures;
> a vapor cavity, in communication with the wicking structure and the plurality of microstructures;
> at least one intermediate substrate with a plurality of protrusions, wherein the plurality of protrusions are directly coupled to each other by at least one cross-member disposed internal to the vapor cavity on the opposite side of the at least one intermediate substrate relative to the metal substrate, and wherein the plurality of protrusions is shaped to increase the effective aspect ratio of the wicking structure by fitting into the plurality of microstructures of the wicking structure in at least one region of the wicking structure; and
> a fluid contained within the thermal ground plane for transporting thermal energy from at least one region of the thermal ground plane to another region of the thermal ground plane, wherein the fluid is driven by capillary forces in at least two orthogonal directions, along the microstructures and along the at least one cross member.

47. On information and belief, Defendant is and has been manufacturing, using, and/or offering for sale devices within the scope of at least claim 1 of the '719 patent.

48. Defendant's manufacture, use, and/or offers for sale were not and are not authorized by The Regents or TiMEMS.

49. On or about February 10, 2020, Raymond Karam, President of TiMEMS, sent correspondence to Jerry Toth, Senior VP, Engineering and Technology for Defendant, informing him of TiMEMS rights in the '719 patent and offering to discuss terms for a license. Copies of this correspondence were also sent to Mitch Aiello, President and CEO of Defendant, and Jeremiah "JJ" Shives, Senior VP and General Counsel. No one at Defendant ever responded to Karam's February 10 correspondence.

50. On or about April 10, 2020, Karam sent additional correspondence to Toth, with copies to Aiello and Shives, again informing him of TiMEMS rights in the '719 patent and offering to discuss terms for a license. Although Toth responded that Defendant was investigating the matter and would be in touch, no one at Defendant ever responded substantively to Karam's April 10 correspondence.

51. On or about June 4, 2020, counsel for TiMEMS sent correspondence to Shives informing him of TiMEMS rights in the '719 patent and of Defendant's infringement thereof. Neither Shives nor anyone else at Defendant ever responded to the June 4 correspondence.

52. On information and belief, Defendant continues to manufacture, use, and/or offer for sale devices within the scope of at least claim 1 of the '719 patent.

## COUNT I

## PATENT INFRINGEMENT

53. Plaintiffs hereby re-allege and incorporate by reference, as if fully set forth herein, each and every allegation set forth in paragraphs 1-52 above.

54. On information and belief, Defendant has infringed and is currently infringing the '719 patent by making, having made, using, and/or offering for sale in the United States devices falling within the scope of one or more claims of the '719 patent, including products sold by Defendant through its "AAVID" division, without authority from Plaintiffs.

55. On information and belief, Defendant has directly infringed at least claim 1 of the '719 patent within the prohibitions of at least 35 U.S.C. § 271(a), and continues to do so.

56. On information and belief, Defendant's direct infringement of the '719 patent has injured and continues to injure Plaintiffs in an amount to be proven at trial, but not less than a reasonable royalty.

57. Despite Defendant's knowledge of the '719 patent and its infringing activities, Defendant has continued to make, have made, use, and/or offered for sale devices falling within the scope of one or more claims of the '719 patent, without authority from Plaintiffs. Defendant has therefore acted recklessly and Defendant's direct infringement of the '719 Patent has been willful, egregious, deliberate and intentional, justifying an award to Plaintiffs of increased damages and attorneys' fees and costs.

58. Even after becoming aware of its infringement of the '719 patent, on information and belief, Defendant has made no effort to alter its products or otherwise attempt to design around the claims of the '719 patent in order to avoid infringement. These actions demonstrate Defendant's blatant and egregious disregard for Plaintiffs' patent rights.

59. As a result of Defendant's unlawful activities, Plaintiffs have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendant's continued direct infringement of the '719 patent causes harm to Plaintiffs in the form of loss of goodwill, damage to reputation, loss of business opportunities, lost profits, inadequacy of monetary damages, and/or direct and indirect competition. Monetary damages are insufficient to compensate Plaintiffs for these harms. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief.

## COUNT II

### DECLARATORY JUDGMENT THAT THE REGENTS OWN ALL RIGHTS, TITLE AND INTEREST IN U.S. PROVISIONAL PATENT APPLICATION NO. 62/106,556 AND ALL APPLICATIONS THAT CLAIM PRIORITY THEREFROM

60. Plaintiffs hereby re-allege and incorporate by reference, as if fully set forth herein, each and every allegation set forth in paragraphs 1-59 above.

61. A justiciable, actual controversy exists between The Regents and Defendant concerning the ownership of rights, title and interest in the '556 provisional and any and all applications and/or patents, both foreign and domestic, that claim priority therefrom, including, at a minimum, the '719 patent.

62. The named inventors on the '556 provisional are Payam Bozorgi and Carl Meinhart. Because both of these individuals were subject to UCSB's Patent Acknowledgement at the relevant time, all rights, title and interest in the '556 provisional, and any and all applications and/or patents that claim priority therefrom, were automatically assigned to The Regents. Any assignment of rights to any other party was improper and such assignment is null and void.

63. The Regents therefore request, pursuant to 28 U.S.C. §§ 2201 et seq., that this Court enter an order that The Regents own all rights, title and interest in the '556 provisional and any and all applications and/or patents, whether foreign or domestic, that claim priority therefrom.

## COUNT III

### UNJUST ENRICHMENT

64. Plaintiffs hereby re-allege and incorporate by reference, as if fully set forth herein, each and every allegation set forth in paragraphs 1-63 above.

65. The Regents have invested funds, facilities, time and/or personnel in developing the subject matter claimed in the '556 provisional and those patents and patent applications claiming priority thereto. These investments were made with the expectation of compensation, in the form of intellectual property such as the '719 patent which could be sold or licensed to obtain proceeds.

66.   Defendant has wrongfully and knowingly claimed rights in the '719 patent, and other patents and patent applications claiming priority from the '556 provisional, and is knowingly benefitting from the investments made by The Regents.

67.   It would be unjust for Defendant to retain these benefits without payment.

68.   The Regents therefore request that this Court enter an order finding that Defendant has been unjustly enriched in an amount of at least $75,000.00 (seventy-five thousand United States dollars) and in such further amounts as may be proven at trial, and that such amounts should be awarded to The Regents.

## COUNT IV

### RECISSION/VOIDING OF ASSIGNMENT FOR U.S. PATENT NO. 10,458,719

69.   Plaintiffs hereby re-allege and incorporate by reference, as if fully set forth herein, each and every allegation set forth in paragraphs 1-68 above.

70.   The '719 patent indicates, on its face, that it is assigned to PiMEMS. On information and belief, no assignment of the '719 patent, or the '460 application, was ever recorded at the PTO.

71.   Pursuant to UCSB's Patent Acknowledgement at the relevant time, all rights, title and interest in the '719 patent were automatically assigned to The Regents. Any assignment of rights to any other party was improper and such assignment is null and void.

72.   Plaintiffs therefore request an order rescinding any assignment of the '719 patent to PiMEMS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)   Entry of judgment in favor of Plaintiffs, and against Defendant, on each and every claim herein;

(b)   An entry of judgment for Plaintiffs, and against Defendant, holding that Defendant has directly infringed the '719 Patent;

(c) Preliminary and permanent injunctions against Defendant, and its officers, directors, principals, agents, sales representatives, servants, employees, successors, assigns, affiliates, divisions, subsidiaries, and all those acting in concert or participation with them, from directly infringing, inducing infringement and/or contributing to the infringement of any claim of the '719 patent pursuant to 35 U.S.C. § 283;

(d) An award to Plaintiffs of damages adequate to compensate for Defendant's past direct infringement of the '719 Patent, but no less than a reasonable royalty;

(e) A determination that Defendant's infringement of the '719 patent has been willful, wanton, and deliberate and that damages against it be increased up to three times pursuant to 35 U.S.C. § 284 on this basis and/or any other basis appropriate under the law;

(f) A determination that Plaintiffs are the prevailing party and therefore entitled to their taxable costs;

(g) A finding that this case is "exceptional" and an award to Plaintiffs of their costs and reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

(h) Entry of an order that The Regents own all rights, title and interest in the '556 provisional and any and all applications and/or patents, whether foreign or domestic, that claim priority therefrom;

(i) Entry of an order that Plaintiffs have been damaged by Defendant in an amount of not less than $75,000.00 and in such further amounts as may be proven at trial and awarding to Plaintiffs their monetary damages;

(j) Entry of an order rescinding any assignment of the '719 patent to PiMEMS;

(k) Award Plaintiffs such other relief as the Court may deem just and proper.

Dated: December 8, 2020

Respectfully submitted,

*/s/ Jonathan D. Baker*
Jonathan D. Baker (State Bar No. 196062)
Email:  jdbaker@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone:  (408) 701-6100
Facsimile:  (844) 670-6009

Donald R. McPhail (to be admitted *pro hac vice*)
DICKINSON WRIGHT PLLC
1825 Eye Street, N.W., Suite 900
Washington, DC 20006
dmcphail@dickinsonwright.com
Telephone: (202) 659-6928
Facsimile: (844) 670-6009

*Attorneys for Plaintiffs*,
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and TIMEMS, INC.

Case No.
COMPLAINT FOR PATENT INFRINGEMENT, DECLARATORY JUDGMENT, UNJUST ENRICHMENT AND RECISSION OF ASSIGNMENT

17

## JURY DEMAND

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiffs demand a trial by jury on all issues herein so triable.

Dated: December 8, 2020

Respectfully submitted,

*/s/ Jonathan D. Baker*
Jonathan D. Baker (State Bar No. 196062)
Email:  jdbaker@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Telephone:  (408) 701-6100
Facsimile:  (844) 670-6009

Donald R. McPhail (to be admitted *pro hac vice*)
DICKINSON WRIGHT PLLC
1825 Eye Street, N.W., Suite 900
Washington, DC 20006
dmcphail@dickinsonwright.com
Telephone: (202) 659-6928
Facisimile: (844) 670-6009

*Attorneys for Plaintiffs*,
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and TIMEMS, INC.