UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LTI FLEXIBLE PRODUCTS, INC.,<br><br>Defendant. | Case No. 3:20-cv-08686-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. Nos. 61, 63, 72 |

Plaintiffs Regents of the University of California ("the Regents") and TiMEMS, Inc., sued defendant LTI Flexible Products, Inc., d/b/a Boyd Corporation ("Boyd") for patent infringement, declaratory judgment of ownership of patents, and unjust enrichment connected to alleged wrongful taking of the patent rights. Boyd's motion to dismiss most of the claims is granted in part and denied in part. The challenged patent infringement claim survives because the plaintiffs have made a sufficient preliminary showing that they have standing to pursue it. One of the three declaratory judgment claims is dismissed because it appears to have been filed beyond the statute of limitations, but the plaintiffs have leave to amend to better plead that the discovery rule saves it. The other two declaratory judgment claims are not similarly time-barred on the face of the complaint. And the unjust enrichment claim is dismissed with leave to amend because the plaintiffs have not adequately connected the alleged wrongful conduct to Boyd.

## BACKGROUND

**I.    FACTUAL BACKGROUND**

The Regents administer the University of California system, including the University of California, Santa Barbara ("UCSB"). Second Amended Complaint ("SAC") [Dkt. No. 49] ¶ 1. TiMEMS is a research and development company associated with the Regents. *Id.* ¶ 8.

The plaintiffs allege that from 2006 to 2010, Payam Bozorgi was a Ph.D. candidate at UCSB, studying micro electromechanical systems ("MEMS") and titanium thermal ground planes ("Ti-TGPs"). *Id.* ¶ 15. He worked under Professor Carl Meinhart. *Id.* According to plaintiffs, Bozorgi and Meinhart (like all UCSB employees and researchers) signed "patent acknowledgements" in 2006 and 1996, respectively, that committed them to assigning inventions to the University that they "conceive[d] or develop[ed] while employed by the University or during the course of [their] utilization of any University research facilities, or any connection with my use of gift, grant, or contract research funds received through the University." *Id.* ¶¶ 18-20. After his Ph.D. was completed, Bozorgi was employed as a UCSB researcher. *Id.* ¶ 23. The plaintiffs allege that he executed an amendment to the patent acknowledgement on December 10, 2011, that turned the future assignment of rights into an immediate assignment. *Id.* ¶¶ 26–27. They allege that Meinhart did the same on February 15, 2013. *Id.* ¶¶ 28–29.

In August 29, 2012, Bozorgi and others founded PiMEMS, Inc. *Id.* ¶ 31. After Bozorgi left his position as a researcher in May 2014, he received a "zero-percent-time university appointment at UCSB, ostensibly to permit him to access UCSB's library in order to publish his previous research, but not to perform new research at UCSB." *Id.* ¶ 33.

Several patents, provisionals, and applications are relevant to these motions. U.S. Patent No. 10,458,719 ("the '719 patent") issued in October 2019, with Bozorgi and Meinhart as named inventors. *Id.* ¶ 36(b). It issued from an application filed in January 2016 and claimed priority from U.S. Provisional Application No. 62/106,556 ("the '556 provisional") filed in January 2015. *Id.* U.S. Provisional Application No. 62/340,308 ("the '308 provisional") was filed in 2016 and would ultimately result in a patent for which Bozorgi was sole inventor. *Id.* ¶ 36(c). U.S. Provisional Application No. 62/573,778 ("the '778 provisional") was filed in October 2017 and would ultimately result in a patent for which Bozorgi was sole inventor. *Id.* ¶ 36(d).

On January 20, 2015, Bozorgi and Meinhart submitted a "request for title clearance" to UCSB for a "high-performance two-phase cooling apparatus"—the subject of the '556 provisional—and attached the '556 provisional to it. *Id.* ¶ 39. That title clearance said that "the subject matter of the '556 provisional is an improvement on the licensed UC technology." *Id.*

¶ 41. It also said—according to the plaintiffs, falsely—that it "was developed exclusively at PiMEMS, Inc., using exclusively PiMEMS' resources" and "funded exclusively by PiMEMS' internal funding and built exclusively using facilities rented by PiMEMS. There were no UC facilities or resources used during the conception or reduction to practice." *Id.* (internal quotation marks omitted).

The plaintiffs claim that Bozorgi made a series of false statements about his use of UCSB facilities in connection with his patents. They allege that he "used UCSB's pulsed laser welder to fabricate Ti-TGPs on multiple occasions after he resigned his position as a salaried researcher on May 31, 2014," but claimed he did not use it. *Id.* ¶¶ 42–43. They claim that he used UCSB's laser welder one-hundred-and-sixty-two times to fabricate Ti-TGPs after May 31. *Id.* ¶¶ 44–45. They say he did not use a third-party's welder, despite his statements otherwise. *Id.* ¶ 46. They claim he also lied to Meinhart about this. *Id.* ¶ 48.

The director of the pertinent UCSB office and Bozorgi discussed the issue on August 15, 2016, and he—again, the plaintiffs say falsely—told her that the "work was outsourced to a third party." *Id.* ¶ 50. As a result, they claim that the '556 provisional "contained data obtained using Ti-TGPs fabricated by Bozorgi in November and December 2014 using UCSB's pulsed laser welder." *Id.* ¶ 51. He had another conversation later that August with the office in which he allegedly said that he *did* use UCSB's welder, but that "this use occurred after UCSB's laser welder had been made available to external users in February of 2015." *Id.* ¶ 53. He reiterated his alleged untruths to the director several more times. *Id.* ¶¶ 55, 57–58. UCSB allegedly "made multiple requests to Bozorgi for documentation to support his false claims that he used a third party's laser welder for work relating to the subject matter of the '556 provisional" during 2016 and 2017 but "Bozorgi was never able to substantiate any of his false claims that he had used a third party's laser welder to perform any of the work relating to the subject matter of the '556 provisional." *Id.* ¶ 60.

Accordingly, "[b]ased, at least in part, on Bozorgi's false statements in the Title Clearance and his false statements in subsequent correspondence relating thereto . . . The Regents declined to waive their ownership rights in the '556 provisional and, instead, elected to assert sole ownership

3

of the '556 provisional." *Id.* ¶ 61. The plaintiffs therefore allege that Bozorgi was required to, but did not, assign his rights in the inventions to the Regents.

The plaintiffs allege on information and belief that Boyd "acquired PiMEMS on or around April 4, 2019," and that Bozorgi is currently employed by Boyd. *Id.* ¶ 77.

## II.  PROCEDURAL BACKGROUND

The plaintiffs filed suit in December 2020 and amended their complaint in February 2021. Dkt. Nos. 1, 26. In May 2021, I granted Boyd's partial motion to dismiss. *See* Order On Motion to Dismiss ("Prior Order") [Dkt. No. 45]. In brief, I found that the plaintiffs had not shown they possessed standing to pursue their claim for infringement of the '719 patent because the evidence indicated they were not the sole owners of the patent. *Id.* 5–8. I found that their claim for declaratory judgment that they owned the '556 provisional was barred by the statute of limitations. *Id.* 8–11. And I dismissed their unjust enrichment and rescission claims as inadequately pleaded. *Id.* 11–13. But I gave leave to amend. In the SAC, the plaintiffs have dropped the rescission claim but realleged all of the others and added two claims for declaratory judgment of ownership on new intellectual property.

**LEGAL STANDARD**

## I.  MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

4

Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## II.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Generally

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

5

fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**B. Rule 9(b)**

FRCP 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake. Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

**DISCUSSION**

**I. PATENT INFRINGEMENT**

The first count alleges infringement of the '719 patent. *See* SAC ¶¶ 91–98. Boyd moves to dismiss because, it argues, the plaintiffs lack Article III and statutory standing. *See* Partial Motion to Dismiss ("Mot.") [Dkt. No. 63] 4–8. The motion is DENIED.

"[T]he irreducible constitutional minimum of standing contains three elements": injury in fact, causality, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). There is a "longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (internal quotation marks omitted).

1    When it comes to suits for patent infringement, a party possesses constitutional standing "if that party has a legally protected interest in the patent created by the Patent Act, so that it can be said to suffer legal injury from the act of infringement." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010) (internal quotation marks and alteration omitted). These "patentees" can either be owners (including assignees) or exclusive licensees. *Id.* "Because the legally protected interests in a patent are the exclusionary rights created by the Patent Act, a party holding one or more of those exclusionary rights" has standing to sue for infringement. *Id.* Consequently, "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *Id.* at 1265.

Statutory standing exists along the same lines: "A party may bring an action for patent infringement only if it is the 'patentee,' *i.e.*, if it owns the patent, either by issuance or by assignment." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1249–50 (Fed. Cir. 2000). Moreover, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998). The Federal Circuit has made clear that this requirement is part of the statutory standing inquiry. *See STC.UNM v. Intel Corp.*, 754 F.3d 940, 944 (Fed. Cir. 2014). As that court has explained, "[o]rdinarily, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997).

Previously, I found that the plaintiffs had not shown that they possessed standing because the evidence indicated that they were not the sole patent owners and they failed to show otherwise. *See* Prior Order 6–8. But the plaintiffs revealed at the hearing on the motion that they had assignments of rights in the patents to them. *Id.* 8. Accordingly, I granted leave to amend. *Id.*

At the outset, the parties display some confusion over the application of legal standards. The plaintiffs argue that standing is tested under Rule 12(b)(6), requiring only plausible pleading with all reasonable inferences drawn in their favor. Opposition to the Mot. ("Oppo.") [Dkt. No. 68] 2–3. They are correct that a challenge to *statutory* standing is brought under that rule. *See*

7

*Uniloc 2017 LLC v. Google LLC*, 508 F. Supp. 3d 556, 566 (N.D. Cal. 2020).  But Article III standing implicates the court's subject matter jurisdiction, so it is tested under Rule 12(b)(1). *WiAV*, 631 F.3d at 1265.  As discussed above, courts analyzing a *factual* attack under that rule need not presume the truth of mere allegations.  *Safe Air*, 373 F.3d at 1039.  Though I construed Boyd's original motion as a factual attack, it appears they now mount a facial one.  *See* Mot. 1 ("Plaintiffs' latest pleading still fails to *plausibly allege* that Plaintiffs have standing to sue for infringement of the '719 Patent." (emphasis added)); *id.* 4 (essentially same).  Despite this facial challenge, as discussed below, Boyd tries to insert several factual disputes (and, at least once, cites cases about factual challenges when doing so, *see* Reply ISO Mot. ("Reply") [Dkt. No. 73] 4 n.3). Because resolving conflicting questions of fact is inappropriate on a facial challenge to subject matter jurisdiction and a pleadings challenge to statutory standing, I cannot resolve them now.

To establish standing, the plaintiffs rely on their allegations that Bozorgi and Meinhart signed the patent acknowledgments, which required them to assign their rights in the patent (but did not actually assign those rights) to the Regents.  *See* SAC ¶¶ 18–20.  They also allege that Bozorgi and Meinhart executed amendments to those acknowledgements that assigned their rights to the Regents.  *See id.* ¶¶ 26–29.  As they characterize those amendments, Bozorgi's said, "I acknowledge my obligation to assign, and do hereby assign, inventions and patents that I conceive or develop within the course and scope of my University employment while employed by the University or during the course of my utilization of any University research facilities, or through any connection with my use of gift, grant, or contract research funds received through the University."  *Id.* ¶ 27.  Meinhart's made the assignment in the patent acknowledgement immediate: "In order to implement this Patent Agreement, I do hereby assign such inventions." *Id.* ¶ 29.  And the agreement itself defined the covered "inventions and patents that I conceive or develop while employed by the University or during the course of my utilization of any University research facilities, or any connection with my use of gift, grant, or contract research funds received through the University."  *Id.* ¶ 18.

As I previously explained, the original patent acknowledgments did not, under Federal Circuit law, assign the inventors' rights; they were just a commitment to assign them in the future.

8

1  *See* Prior Order 7.  But the language as alleged in the amendments—"I do hereby assign"—*is* an
2  automatic assignment of rights under Federal Circuit law (which Boyd does not dispute).  *See*
3  *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008);
4  *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000).  Accordingly, the plaintiffs
5  have put forward enough to get them past the pleadings.

6  Boyd makes two arguments against this finding.  First, it contends that the plaintiffs were
7  required to produce both written amendments, but only put forward the one from Meinhart.  Mot.
8  5.  The plaintiffs admit that while they have presented Meinhart's alleged acknowledgement, they
9  have only produced "documents showing that Bozorgi had also electronically signed those
10 Amendments."  Oppo. 6.  Those "documents" are the electronic record that was generated when
11 Bozorgi allegedly signed the amendment and a spreadsheet that keeps track of which employees
12 signed it and when.  *See* Dkt. No. 68-1.

13 Boyd's motion cited a group of cases to argue that the plaintiff needed to produce the
14 actual written agreement to show Article III standing.  *See, e.g.*, *Dominion Assets LLC v. Masimo*
15 *Corp.*, No. 12-CV-02773-BLF, 2014 WL 2937058, at *4 (N.D. Cal. June 27, 2014); *Gaia Techs.,*
16 *Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996).  It is unclear whether the
17 caselaw is as strict as Boyd contends; there is some language indicating that evidence *of* the
18 written assignment may be sufficient.  *See, e.g.*, *Dominion*, 2014 WL 2937058, at *4 ( "[I]t is
19 incumbent upon a plaintiff whose standing has been challenged to come forward with the requisite
20 evidence necessary to establish that an assignment, in writing, of the Intellectual Property took
21 place before the lawsuit was filed." (internal quotation marks omitted)).  And Boyd cannot elide a
22 facial and factual challenge to jurisdiction.  Because it only fairly argues for the former, the
23 plaintiffs' allegations about the assignments must prevail at this posture.

24 Further, Boyd's Reply omitted any reference to this argument and suggested instead that
25 the plaintiffs' evidence violates the best evidence rule.  *See* Reply 2.  Under that rule, as a general
26 matter, "[a]n original writing, recording, or photograph is required in order to prove its content
27 unless these rules or a federal statute provides otherwise."  Fed. R. Evid. 1002.  But again, a Rule
28 12(b)(6) motion (or a facial attack on subject matter jurisdiction) does not test the sufficiency of

United States District Court
Northern District of California

evidence. At a later stage, Boyd may have a solid argument, but the plaintiffs' allegations are sufficient now.

Second, Boyd argues that Meinhart's assignment does not cover the patent at issue. Mot. 6. This is so, it asserts, because the plaintiffs do not allege that Meinhart contributed to the invention in the course of his employment at the University or with University facilities, as the patent acknowledgement and amendment require. *Id.* The plaintiffs respond that the SAC "alleges that Meinhart was an employee of UCSB engaged in research and development of titanium thermal ground planes at the relevant time and that Meinhart was an inventor of the application from which the '728 patent issued (whose ownership by The Regents is undisputed), the broadest claim of which contains nearly all of the limitations of the broadest claim in the application from which the '719 patent issued." Oppo. 5 (citing SAC ¶¶ 15, 19, 30, 36–37). As a result, the plaintiffs argue that it can be reasonably inferred that "at least some" of Meinhart's contribution to the claimed invention was during the course of his employment. *Id.*

At the pleadings stage, the plaintiffs have alleged enough. Boyd's argument raises a factual issue that is intimately intertwined with the scope of the claims—that is, the merits. Indeed, Boyd's reply makes this clear by arguing, for the first time, that all Meinhart would have contributed to that patent was prior art, so he cannot be an inventor. Reply 2–3. These matters are either for the merits or they are for an evidentiary determination about standing, but they are not for the pleadings. *See Dominion*, 2014 WL 2937058, at *4 ("If, however, the determination of the jurisdictional issue is dependent on the resolution of factual issues going to the merits, the district court must apply the summary judgment standard in deciding the motion to dismiss."). At this point, it can be plausibly and reasonably inferred from the allegations that Meinhart's contribution, if any, to the invention was at least partially done during the course of his employment. Discovery will show what Meinhart contributed, when, and whether it was covered by the agreement.

Boyd also argues that Bozorgi's assignment to *it* shows that the Regents are, at best, co-owners suing without the joinder or consent of all co-owners, and so lack statutory standing. *See STC.UNM*, 754 F.3d at 944. But if, as the plaintiffs allege, Bozorgi assigned his rights to the Regents in the amendment, then he presumably had no rights in the patent to later assign to Boyd.

10

1  *See, e.g.*, *Gaia*, 93 F.3d at 777. At this early stage, the well-pleaded allegations are enough to show that the Regents have the sole ownership interest in the patent. The motion to dismiss this claim is DENIED.

This all said, I have concerns about the plaintiffs' ability to show standing as a *factual* matter. I suggest that the parties focus early in discovery on the ownership issue and will allow an initial motion for summary judgment focused solely on that. This is not a requirement, but it would be a shame to go through months or years of technical discovery, recruitment and deposition of experts, and motions practice on the infringement claim if it will ultimately be dismissed at summary judgment or trial as a result of an ownership issue. I will not foreclose either side from filing a second motion for summary judgment on the other issues later in the case.

## II.  DECLARATORY JUDGMENT

Claims three, four, and five each seek declaratory judgment that the Regents own a provisional patent application and all applications that claim priority from it (respectively, the '556, '308, and '778 provisionals). *See* SAC ¶¶ 107–18. Boyd moves to dismiss the claims as barred by the statute of limitations. I previously found that the declaratory judgment claim on the '556 provisional was time-barred. *See* Prior Order 8–11. The plaintiffs did not previously pursue the other two claims. The motion is GRANTED on claim three and DENIED on claims four and five.

Based on the parties' agreement, the Prior Order found that the relevant statute of limitations is four years from when a claim accrues; neither contests that here. Prior Order 9; *see also Regents of Univ. of California v. Chen*, No. 16-CV-07396-EMC, 2017 WL 3215356, at *4 (N.D. Cal. July 26, 2017) (applying four-year contract statute of limitations to similar patent ownership claims). The Federal Circuit has applied state law to the question of when a claim of declaratory judgment of patent ownership accrues because state law governs the underlying contract. *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009), *aff'd on other grounds*, 563 U.S. 776 (2011).

In California, "[a] contract cause of action does not accrue until the contract has been breached." *Spear v. California State Auto. Assn.*, 2 Cal. 4th 1035, 1042 (1992); *see also Howard*

1   *Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 821 (2001), *as modified* (July 18,

2   2001) ("[A] declaratory judgment action . . . must be brought within the same . . . time period after

3   accrual of the cause of action as an action for damages or injunction on the same liability."

4   (internal citations omitted)).

California also employs the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Said otherwise, accrual occurs "when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005).

**A. The '556 Provisional**

Boyd argues that the claim about the '556 provisional accrued when Bozorgi and Meinhart submitted their Request for Title Clearance on January 20, 2015, which was about the '556 provisional. Mot. 9–10. I previously agreed but explained:

> At the hearing, the plaintiffs seemed to argue that there was either later accrual or tolling because Bozorgi allegedly lied about his use of University resources in developing the patent, so the Regents would not have been on notice due to his lie. But if their argument is fraudulent concealment, it must be pleaded with particularity; the plaintiffs do not detail when and under what circumstances they discovered the alleged concealment. *See Cmty. Cause v. Boatwright*, 124 Cal. App. 3d 888, 900 (1981); []*Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2018). If their argument is based on the discovery rule, they must plead specifically how and under what circumstances the relevant facts were discovered. *Fox*, 35 Cal. 4th at 807; *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995). None of this appears in their FAC or brief. I am giving the plaintiffs leave to amend to better plead what they believe occurred.

Prior Order 11.

The SAC is still vague about when the plaintiffs were on notice (or facts showing when they should have been) of the competing claim of intellectual property ownership. To be sure, they include new allegations about *Bozorgi* allegedly misleading them about whether the patent was developed using University facilities. *See* SAC ¶¶ 42–63. But they withhold when *they* first were on notice that they had some basis for believing his statements were false. All they plead (as

they pleaded before) is that,

> Based, at least in part, on Bozorgi's false statements in the Title Clearance and his false statements in subsequent correspondence relating thereto in 2016 and 2017, by letter dated September 20, 2017 from Englander, The Regents declined to waive their ownership rights in the '556 provisional and, instead, elected to assert sole ownership of the '556 provisional and any application or patent, foreign or domestic, relating to the '556 provisional, including the '460 application.

*Id.* ¶ 61. And it seems that the Regents had at least some notion that Bozorgi may not have been truthful because the plaintiffs plead that the University "made multiple requests to Bozorgi for documentation to support his false claims" as early as (some unspecified point in) 2016. *Id.* ¶ 60. Of course, they could have just been asking for documentation without worries of an ill motive, but their lack of detail in pleading makes it impossible to know.

The plaintiffs omit the key information: when they came to have doubts or suspicions about what Bozorgi asserted in the title clearance, under what circumstances, and on what basis. This is no empty pleading formality because the discovery rule only delays accrual until a plaintiff "at least to suspect a factual basis for [the] elements" of the cause of action. *Fox*, 35 Cal. 4th at 807. That is why "California law makes clear that a plaintiff must allege *specific* facts establishing the applicability of the" rule. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995) (emphasis added). If, for example, the plaintiffs suspected or should have suspected that Bozorgi was being untruthful in the title clearance, it seems difficult to avoid the conclusion that they were on adequate notice to start the clock. *See Roche*, 583 F.3d at 847 (laying out standard for accrual of declaratory judgment of patent ownership claim under California law). Similarly, if the plaintiffs learned some information that they have not pleaded that created or should have created that suspicion of the alleged breach more than four years before filing suit, they would also likely be time-barred. *See id.* But because the plaintiffs do not include this basic information, there is no way to determine whether the running of the statute is "apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation marks and citation omitted).

If they choose to amend the complaint, the plaintiffs must plead when the University and/or its relevant decisionmakers first suspected that it had an ownership interest in the patent

13

and first suspected that Bozorgi was untruthful in saying otherwise.  The plaintiffs must also plead the circumstances under which these suspicions developed and the basis for them.

Because the plaintiffs have failed to plead the facts surrounding their discovery of this information adequately, the claims are dismissed with leave to amend.  I previously warned them that they had to plead their discovery with more specificity.  *See* Prior Order 11.  Accordingly, a future dismissal on this ground will be with prejudice.

### B.  The '308 and '778 Provisionals

Boyd argues that the claims on the '308 and '778 provisionals are time-barred "for the same reasons" as the '556 provisional.  Mot. 11.  Its argument is that this is so because the SAC alleges that "each Provisional application includes either data or data and figures 'from the '556 Provisional obtained using Ti-TGPs that Bozorgi fabricated using UCSB's laser welder,'" *id.* (citing SAC ¶¶ 66–67, 71–72), and "Plaintiffs seem to contend that they own the '308 and '778 Provisional applications because the later-filed provisional applications incorporate the invention disclosed in the '556 Provisional.  But Plaintiffs knew Dr. Bozorgi claimed ownership in the TGPs of the '556 Provisional in January 2015 and that he intended to seek intellectual-property protection for them." *Id.*

But both of *these* provisionals were filed in 2016 and 2017, after the title clearance was submitted, and no title clearance was submitted about them.  Accordingly, it is not apparent from the face of the complaint that the University would have been put on notice of the alleged breach for the same reasons as the '556 provisional.  The argument that knowledge of the '556 would have put the plaintiffs on notice of this does not hold up, as Boyd appears to recognize in its reply brief by indicating it misunderstood the basis of the plaintiffs' claims of ownership.  *See* Reply 7–8 ("Boyd understood" what the basis was but "Plaintiffs clarify" what it truly is).[1]

At the hearing, counsel argued that *Roche* found analogous claims time-barred.  There, the

---

[1] The reply brief argues, for the first time, that the claims are also inadequately pleaded (not just time-barred).  Reply 7–8.  Entirely new arguments raised for the first time in reply are improper, the plaintiffs did not have a chance to respond, and I decline to address the argument.  *See, e.g.*, *In re Lal*, No. C 01-1507 VRW, 2002 WL 449661, at *3 (N.D. Cal. Mar. 15, 2002).

14

Federal Circuit explained that a presentation to the plaintiff showed that the defendant "claimed ownership of [another's] work, that [the defendant] had patented the invention related to the Holodniy-Cetus collaboration, that [the defendant] continued to file related patent applications, and that [the defendant] expected [the plaintiff] to take a license to current and future patents." *Roche*, 583 F.3d at 847. That presentation, the court said, put the plaintiff on notice because it "directly contradicted" its relevant claim of rights. *Id.* The portion that Boyd relied on at the hearing is the court's holding that the presentation would put the plaintiff on notice of patents not yet issued because the plaintiff "had explicit notice that Stanford intended to secure additional patents to the same subject matter." *Id.* But here, there is no similar allegation of "explicit notice."

### III. UNJUST ENRICHMENT

The sixth claim is for unjust enrichment and essentially alleges that Boyd "wrongfully and knowingly claimed rights in the '719 patent, the '352 patent, '041 patent, and the '251 patent, and other patents and patent applications claiming priority from the '556 provisional, the '308 provisional, and/or the '778 provisional, and is knowingly benefitting from the investments made by The Regents." SAC ¶ 120.

"While California case law appears unsettled on the availability of [unjust enrichment as] a cause of action," the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). A plaintiff must adequately allege "that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Id.* at 1038–39. Under California law, "[i]t must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Assn.*, 205 Cal. App. 3d 1415, 1422 (1988) (internal quotation marks omitted). Accordingly, courts have held that this claim, when permitted, sounds in fraud and must be pleaded under Rule 9(b). *Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627-HSG, 2019 WL 7050149, at *7 (N.D. Cal. Dec. 23, 2019); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011). The plaintiffs do not

1  dispute they must meet the heightened pleading standard.

2  The parties' dispute in their briefs is narrow. Boyd argues that the plaintiffs have only
3  alleged that *Bozorgi* (or, at most, PiMEMS) did anything unjust, not Boyd. Mot. 11–13. The
4  plaintiffs respond that, under principles of successor liability, Boyd is a successor to PiMEMS and
5  so is liable as well. Oppo. 11–12.[2]

6  There is no allegation in the complaint that Boyd is a legal successor to PiMEMS. Instead,
7  the plaintiffs' brief relies on the "about" section of Boyd's website and asserts that there was a
8  phone call between the parties in which counsel stated that PiMEMS is no longer a separate legal
9  entity (unsupported by any sworn declaration). That is insufficient to establish successor liability.
10 At a minimum, the plaintiffs must adequately *plead* that Boyd is PiMEMS's legal successor (and
11 any other necessary elements), not rely on informal, extra-pleadings statements that are not
12 conclusive anyway. The SAC *does* allege that Boyd "acquired" PiMEMS, SAC ¶ 77, but that
13 appears insufficient under the law because not all acquisitions can result in successor liability.
14 *See, e.g.*, *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05 0553 MHP, 2007 WL 2462142, at *6
15 (N.D. Cal. Aug. 29, 2007). The plaintiffs cite no contrary authority. Leave to amend is granted to
16 pursue this theory. This too will be the final amendment given.

17 **IV.    MOTIONS TO SEAL**

18 The Regents seek to seal Meinhart's employee identification number that appears in two
19 exhibits attached to Boyd's Motion. *See* Dkt. No. 65 (declaration in support). There are
20 "compelling reasons" to do so, because that number is otherwise confidential, the Regents
21 represent it could be used to obtain other sensitive information, and the digits themselves are not
22 material. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). The
23 motion to seal that was filed sought to redact other documents beyond the two in the declaration.

---

[2] At the hearing, plaintiffs' counsel argued for the first time that they may be able to achieve successor liability because Bozorgi is an employee of Boyd. It is unclear what exact theory counsel meant—whether *respondeat superior* or something else—or if it is viable. Either way, it is not pleaded. And the argument did not appear in the briefs and was not made in a sufficiently developed way to address. This is now the second time the plaintiffs have unveiled new substantive arguments at the hearing that never appeared in the briefs. *See* Prior Order 8. The plaintiffs cannot repeatedly deprive the opposing party of fair opportunities to respond, and me to adjudicate, by withholding these arguments until the last minute.

1 *See* Dkt. No. 61. Because the declaration does not address them (and they do not contain the

2 employee ID number), they will not be redacted. The motion is GRANTED on exhibits F and I

3 and is otherwise DENIED.

4 As it was required to, Boyd also moved to seal the Title Clearance filed with its Reply

5 because the plaintiffs designated it confidential in discovery. *See* Dkt. No. 72. The plaintiffs have

6 not filed a declaration in support of this motion as required by Civil Local Rule 79-5(e)

7 articulating the reasons to seal, so it is DENIED.

8 The parties are ORDERED to file unredacted versions of all documents for which the

9 motions to seal are denied within 14 days.

## CONCLUSION

11 The motion to dismiss is GRANTED IN PART with leave to amend and DENIED IN

12 PART. Claims one, three, and six are dismissed with leave to amend. Any amended complaint

13 shall be filed within 21 days.

**IT IS SO ORDERED.**

Dated: September 10, 2021

William H. Orrick
United States District Judge

17