UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LTI FLEXIBLE PRODUCTS, INC.,<br><br>Defendant. | Case No. 3:20-cv-08686-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 89 |

Plaintiffs Regents of the University of California (the "Regents") and TiMEMS, Inc., sued defendant LTI Flexible Products, Inc., d/b/a Boyd Corporation ("Boyd") for (among other things) declaratory judgment that the plaintiffs rightfully own a patent assigned to Boyd. They allege that the two named inventors were obligated to, and ultimately did, assign their rights in the patent to the Regents before the assignment to Boyd. I have twice held that claim is time-barred, but granted leave to amend because the plaintiffs revealed new facts in their briefs and argument that were never pleaded.

Now, Boyd moves to dismiss the claim for declaratory judgment of ownership only to the extent it is based on the pro-rata interest of one of the named inventors. The motion is granted and the count is dismissed with prejudice to that limited extent. The claim remains time-barred on the face of the Complaint and the plaintiffs have not pleaded any facts showing that accrual is delayed by the discovery rule. Instead, they once again reveal new, unpleaded facts in their brief. Leave to amend to add these facts is denied based on the plaintiffs' pattern of repeatedly escaping dismissal with prejudice by unveiling new facts only in response to motions to dismiss.

**BACKGROUND**

I have discussed the allegations in this suit in several previous orders and only repeat them

here to the extent necessary to understand the resolution of this motion. This Order assumes familiarity with all previous ones.

Payam Bozorgi studied and researched at the University of California, Santa Barbara ("UCSB"), administered by the Regents. Third Amended Complaint ("TAC") [Dkt. No. 86] ¶ 17. He worked under Professor Carl Meinhart. *Id.* According to the Regents, Bozorgi and Meinhart signed agreements that obligated them to assign their rights in patentable inventions conceived or developed while employed at UCSB or while utilizing University facilities to the Regents. *Id.* ¶¶ 20, 24. Later, they allegedly signed amendments that made the promised assignments. *Id.* ¶¶ 31, 33.

U.S. Provisional Patent Application No. 62/106,556 ("the '556 provisional") was filed on January 22, 2015, and listed Bozorgi and Meinhart as joint inventors. *Id.* ¶ 42(a). The plaintiffs allege that the '556 provisional was covered by the terms of the patent agreements because Bozorgi used University facilities to develop it and Meinhart "used UCSB facilities and resources to reduce that subject matter to practice." *Id.* ¶¶ 44, 47. On January 20, 2015, Bozorgi and Meinhart submitted a "Request for Title Clearance" to UCSB that disclosed the '556 provisional. *Id.* ¶ 45. It informed the University that the subject matter of the '556 provisional was developed exclusively at a company called PiMEMS, Inc., using only PiMEMS facilities and resources. *Id.* ¶ 48. The plaintiffs claim that, in reality, Bozorgi used a "laser welder" at UCSB to fabricate the subject matter of the '556 provisional. *Id.* ¶ 60. The plaintiffs allege that Meinhart revealed to UCSB officials in 2016 that he suspected Bozorgi had not been truthful in the Request for Title Clearance about his lack of use of UCSB facilities. *Id.* ¶ 61.

The plaintiffs filed suit December 2020 for, among other things, declaratory judgment that the Regents owned the '556 provisional and the applications and patents that followed from it. Dkt. No. 1. I twice dismissed that claim with leave to amend as barred by the statute of limitations—dismissals discussed in greater detail below.

## LEGAL STANDARD

Under Federal Rule of Evidence 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

2

dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.    STATUTE OF LIMITATIONS**

Claim three seeks declaratory judgment that the Regents own the '556 provisional. *See* TAC ¶¶ 143–47. As noted, I twice dismissed the claim as time-barred. *See* Dkt. Nos. 45 ("MTD Order 1"), 81 ("MTD Order 2"). A motion to dismiss based on a statute of limitations can only be granted when its running "is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation marks and citation omitted). Based on

1   the parties' agreements, the Prior Orders used a four-year statute of limitations from when the

2   claim accrues.  MTD Order 1 at 9; MTD Order 2 at 11*; see also Regents of Univ. of California v.*

3   *Chen*, No. 16-CV-07396-EMC, 2017 WL 3215356, at *4 (N.D. Cal. July 26, 2017).  The Federal

4   Circuit has applied state law to determine when a claim of declaratory judgment of patent

5   ownership accrues because state law governs the underlying contract.  *Bd. of Trustees of Leland*

6   *Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009), *aff'd on*

7   *other grounds*, 563 U.S. 776 (2011).

8   In California, "[a] contract cause of action does not accrue until the contract has been

9   breached."  *Spear v. California State Auto. Assn.*, 2 Cal. 4th 1035, 1042 (1992); *see also Howard*

10  *Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 821 (2001), *as modified* (July 18,

11  2001) ("[A] declaratory judgment action . . . must be brought within the same . . . time period after

12  accrual of the cause of action as an action for damages or injunction on the same liability."

13  (internal citations omitted)).  California also employs the discovery rule, which "postpones accrual

14  of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *E-*

15  *Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007).  Said otherwise, accrual

16  occurs "when the plaintiff has reason to suspect an injury and some wrongful cause, unless the

17  plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a

18  factual basis for that particular cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th

19  797, 803 (2005).

20  When addressing the original complaint, defendant LTI Flexible Products, Inc. d/b/a Boyd

21  Corporation ("Boyd") argued that the claim accrued when Bozorgi and Meinhart submitted their

22  Request for Title Clearance on January 20, 2015 (more than four years before filing suit).  I agreed

23  but explained,

24  > At the hearing, the plaintiffs seemed to argue that there was either later accrual or tolling
25  > because Bozorgi allegedly lied about his use of University resources in developing the
    > patent, so the Regents would not have been on notice due to his lie.  But if their argument
26  > is fraudulent concealment, it must be pleaded with particularity; the plaintiffs do not detail
    > when and under what circumstances they discovered the alleged concealment.  *See Cmty.*
27  > *Cause v. Boatwright*, 124 Cal. App. 3d 888, 900 (1981); *see Finney v. Ford Motor Co.*,
    > No. 17-CV-06183-JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2018).  If their
28  > argument is based on the discovery rule, they must plead specifically how and under what

> circumstances the relevant facts were discovered. *Fox*, 35 Cal. 4th at 807; *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995). None of this appears in their FAC or brief. I am giving the plaintiffs leave to amend to better plead what they believe occurred.

MTD Order 1 at 11.

In addressing that amended complaint and second motion, I wrote that,

> The SAC is still vague about when the plaintiffs were on notice (or facts showing when they should have been) of the competing claim of intellectual property ownership. To be sure, they include new allegations about *Bozorgi* allegedly misleading them about whether the patent was developed using University facilities. *See* SAC ¶¶ 42–63. But they withhold when *they* first were on notice that they had some basis for believing his statements were false . . . .
>
> And it seems that the Regents had at least some notion that Bozorgi may not have been truthful because the plaintiffs plead that the University "made multiple requests to Bozorgi for documentation to support his false claims" as early as (some unspecified point in) 2016. *Id.* ¶ 60. Of course, they could have just been asking for documentation without worries of an ill motive, but their lack of detail in pleading makes it impossible to know.
>
> The plaintiffs omit the key information: when they came to have doubts or suspicions about what Bozorgi asserted in the title clearance, under what circumstances, and on what basis. This is no empty pleading formality because the discovery rule only delays accrual until a plaintiff "at least to suspect a factual basis for [the] elements" of the cause of action. *Fox*, 35 Cal. 4th at 807. That is why "California law makes clear that a plaintiff must allege *specific* facts establishing the applicability of the" rule. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995) (emphasis added).

MTD Order 2 at 12–13. I instructed that, "[i]f they choose to amend the complaint, the plaintiffs must plead when the University and/or its relevant decisionmakers first suspected that it had an ownership interest in the patent and first suspected that Bozorgi was untruthful in saying otherwise. The plaintiffs must also plead the circumstances under which these suspicions developed and the basis for them." *Id.* at 13–14.

Now, Boyd's argument is narrowed: it bases it solely on Meinhart's ownership interest (not Bozorgi's). *See* Partial Motion to Dismiss TAC ("Mot.") [Dkt. No. 89] 1, 5–6. Each co-inventor, Boyd points out, has a pro-rata ownership interest in the patent. *Id.* 3; *see Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998). Because Meinhart is alleged to have assigned his rights in the patent to the Regents, Boyd argues that his assertion of those rights in the '556 provisional allegedly breached the agreement, triggering the statute of limitations. Mot. 5–6. When Bozorgi and Meinhart submitted the Request for Title Clearance, Boyd contends, the

5

Regents were or should have been on notice of his assertion of ownership. *Id.* So, Boyd argues, this claim should be dismissed only "as to Plaintiffs' claim of ownership in Meinhart's pro-rata share of ownership in the '556 Provisional." *Id.* 6.[1]

I agree that, to the extent that the claim is for Meinhart's interest, it is time-barred on the face of the Complaint. As I have found previously, the Regents were or should have been put on notice of Bozorgi and Meinhart's assertions of ownership—that is, their alleged breach—when they filed the Request for Title Clearance because that "put [the Regents] on notice that [Bozorgi and Meinhart] claimed ownership of [the] work [and] that [Bozorgi and Meinhart] had patented the invention . . . . These statements directly contradicted [the Regents'] claim that it owns all of [Bozorgi and Meinhart's] rights." *Roche*, 583 F.3d at 847; *see* MTD Order 1 at 10; MTD Order 2 at 13. To get around that finding, the plaintiffs have pleaded that Bozorgi lied to the Regents about his use of their technology—which is what allegedly gave them ownership. But the plaintiffs have pleaded nothing similar about Meinhart. From the face of the TAC, all we know about Meinhart relevant to this issue is that he submitted the Request for Title Clearance to the University in which he asserted ownership of the technology. Accordingly, the claim is time-barred on the face of the Complaint because the Regents were put on notice of Meinhart's contrary claim of ownership when it was filed and the plaintiffs have not pleaded that the discovery rule or a tolling doctrine applies. *See Roche*, 583 F.3d at 847.

In response, the plaintiffs do not point to anything in the TAC that would save the claim based on Meinhart's interest. Instead, they assert new facts in their brief. According to them, Meinhart did not "use" University facilities by using the laser welder, as Bozorgi allegedly did. Opposition to the Mot. ("Oppo.") [Dkt. No. 95] 4–5. Instead, he used the *data* from Bozorgi's use of the welder, which the plaintiffs contend is sufficient to give them ownership of his contributions to the provisional. *Id.* The plaintiffs argue that Meinhart was unaware of his alleged breach when he filed the provisional and submitted the Request for Title Clearance because Bozorgi lied to *him* to about his use of the welder. *Id.* 5. As a result, they say, the Regents would

---

[1] The plaintiffs do not dispute that the claim can be dismissed to the extent it is based on a pro-rata interest but not in its entirety, so I proceed on the assumption that it can.

1    have been put on notice of his alleged use of University resources in the same July 2016 meeting
2    as they were put on notice of Bozorgi's.  *Id.*  But these are not pleaded allegations, nor are they
3    inferences that can reasonably be drawn from the complaint, so they cannot save the claim.

4          Separately, the plaintiffs now maintain that accrual did not occur when the Request for
5    Title Clearance was submitted at all; they say it would have happened when Meinhart and Bozorgi
6    allegedly assigned their rights to PiMEMS.  *See* Oppo. 3.  There are several reasons this argument
7    is unpersuasive.  To start, I already determined, based on the arguments made at the time, that
8    accrual occurred (absent the discovery rule or tolling) when the Request for Title Clearance was
9    submitted.  The plaintiffs never before offered their current argument through either round of
10   litigating this issue; Boyd and I depended on their positions in formulating arguments and making
11   rulings.  In fact, the plaintiffs previously affirmatively argued that accrual would happen when the
12   patent *issued*, which I rejected under Federal Circuit precedent.  *See* MTD Order 1 at 10–11.
13   Now, they advance an entirely different theory.

14         The theory is meritless in any event.  Up until this change in view, the plaintiffs have been
15   clear about what was required to breach the contract: Bozorgi and Meinhart claiming rights in the
16   patent for themselves.  *See, e.g.*, Dkt. No. 35 (plaintiffs' past brief arguing that "[i]n the present
17   case, the date on which Plaintiffs discovered facts which would make a reasonably prudent person
18   suspicious that he has been injured (i.e. that Bozorgi had failed to live up to his obligations under
19   the Patent Acknowledgement Agreement) was no earlier than October 29, 2019, the date on which
20   the '719 patent issued.").  The plaintiffs were aware, or reasonably should have been aware, of that
21   assertion of contrary ownership prior to the assignment to PiMEMS.  They were sufficiently put
22   on notice to investigate their ownership stake; indeed, that is the entire point of submitting a
23   Request for Title Clearance.

24         Relatedly, the plaintiffs argue that the submission of the Request for Title Clearance was
25   not a breach of the contract but "required" by it (because the patent acknowledgements committed
26   the inventors to letting the University examine the inventions through that process to determine its
27   rights).  Oppo. 3.  That misses the point.  It is the assertion of their ownership that allegedly
28   breached the contracts, not submitting the Request for Title Clearance.  It is submitting the request

1  that notified the plaintiffs (or reasonably should have) that there was a contrary claim of
2  ownership absent specific facts showing that the discovery rule applies.  And because they have
3  not pleaded any facts about their discovery of Meinhart's alleged contrary assertion of ownership
4  (unlike Bozorgi's), they have failed to carry their burden to show with specificity that accrual is
5  delayed by the discovery rule.  *See California Sansome*, 55 F.3d at 1407.

## II.  LEAVE TO AMEND

The issue therefore becomes whether I should grant leave to amend so that the plaintiffs can once again plead the allegations they make in their argument.  I will not.  Though amendment is favored and leave to amend should be granted liberally, *see Moore*, 885 F.2d at 538, these are extraordinary circumstances and the factors that govern the inquiry point squarely toward denying leave to amend.[2]

This is now the third time that the plaintiffs have used this tactic in response to a motion to dismiss.  The first time, "plaintiffs' counsel raised yet another purported assignment [that would give them standing], one that had not been referenced in the FAC or in briefing."  MTD Order 1 at 8.  Then, on this issue specifically, the plaintiffs argued for the first time "[a]t the hearing . . . that there was either later accrual or tolling because Bozorgi allegedly lied about his use of University resources in developing the patent, so the Regents would not have been on notice due to his lie."  *Id.* at 11.  But "[n]one of this appear[ed] in their FAC or brief."  *Id.*  The plaintiffs have done the same thing again.  In the last order, I explained that "[b]ecause the plaintiffs have failed to plead the facts surrounding their discovery of this information adequately, the claims are dismissed with leave to amend.  I previously warned them that they had to plead their discovery with more specificity.  *See* [MTD] Order [1 at] 11.  Accordingly, <u>a future dismissal on this ground will be with prejudice</u>."  MTD Order 2 at 14 (emphasis added).  This is the fourth attempt at a complaint and the third round of motions to dismiss.  It is the third time that the plaintiffs have conjured new

---

[2] At this point, whether the declaratory judgment claim proceeds or not is likely to make no difference to the outcome of the case.  To prove infringement, the plaintiffs will have to prove that they own the patent, which has been and remains contested.  Accordingly, the same issue to be resolved in the declaratory judgment claim will be resolved in the course of litigating the infringement claim.

8

allegations that appear nowhere in the operative complaint.  And it comes after an explicit warning that the next dismissal would be with prejudice.  Boyd does not have to keep defending itself against these shifting-sands allegations.

The undue-prejudice factor—the most important—favors denying leave to amend.  *See Moore*, 885 F.2d at 538.  The prejudice to Boyd is that it will have to go through another round of pleadings (and likely motions) even though it has already done so three times.  Each time, it has had to contend with new allegations that were never pleaded that swooped in at the last minute attempt to save the claim.  The undue-delay factor, *see id.*, likewise counsels against amendment.  The plaintiffs have dragged out the first procedural step of this case by more than half-a-year by failing to plead allegations and belatedly revealing them.  Filing another complaint and litigating another motion to dismiss would take at least another two months if done according to the normal schedule; enough is enough.  The bad-faith factor, *see id.*, is also met, as the chronology of the plaintiffs' ever-changing allegations shows.  And while I cannot say that amendment would be absolutely futile, *see id.*, I have serious concerns that this same pattern would recur, leaving us in the same position again and again—a situation akin to futility.  On top of this, I explicitly warned in the last order that dismissal with prejudice would be the consequence and put the plaintiffs on notice that they should plead all relevant facts about this precise, narrow issue.

## CONCLUSION

The motion to dismiss is GRANTED.  Count III is DISMISSED WITH PREJUDICE to the extent it is predicated on Meinhart's interest or former interest in the '566 provisional.

**IT IS SO ORDERED.**

Dated: December 14, 2021

William H. Orrick
United States District Judge