UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LTI FLEXIBLE PRODUCTS, INC., et al.,<br><br>Defendants. | Case No. 3:20-cv-08686-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED THIRD PARTY COMPLAINT**<br><br>Re: Dkt. No. 145 |

This protracted dispute involves claims of alleged patent infringement, fraudulent concealment of patent ownership, and contract fraud, along with several parties that all have somewhat conflicting versions of events. Initially, the Regents of the University of California ("the Regents") sued LTI Flexible Products, Inc. (dba "Boyd") for patent infringement and unjust enrichment, among other things. Boyd countersued the Regents for fraudulent inducement, fraudulent concealment, promissory fraud, and trespass to chattels, all related to the Regents' alleged failure to disclose their purported ownership of the patents-in-suit that Boyd purchased. In response and as counter-claim defendants and now third-party plaintiffs, the Regents filed a third-party complaint against Dr. Payam Bozorgi, asserting claims of fraudulent inducement, fraudulent concealment, and breach of fiduciary duties for failing to disclose relevant ownership interests in the patents-in-suit before they were sold to Boyd. This motion to dismiss arises from that third-party complaint. For the reasons that follow, I GRANT the motion.

**BACKGROUND**

Prior orders recount the background facts of this dispute, and here I recount many again in detail, as they are highly relevant to the disposition of this motion. As described in the complaint—which, as discussed further below, I mostly take as true for the purposes of this

motion—the relevant facts are as follows.

In the operative Amended Third-Party Complaint ("ATPC"), the Regents allege that Dr. Payam Bozorgi was a PhD candidate at the University of California, Santa Barbara ("UCSB") from 2006 to 2010 and later transitioned to a researcher position. ATPC ¶ 11, 15. In 2006, Bozorgi signed a Patent Acknowledgment form obligating him to assign to the university all inventions and patents that he conceived or developed while employed by the university or while using university funds or facilities. *Id.* ¶ 13-14. In 2011 Bozorgi signed an amendment assigning ownership of those rights to UCSB. *Id.* ¶ 18-19.

In 2012, Bozorgi founded a company called PiMEMS with a mentor and co-inventor, Carl Meinhart. *Id.* ¶ 20. At some unspecified point, the Regents acquired shares in PiMEMS through a shell company. *Id.* ¶ 41.

In 2014, Bozorgi filed several patent applications for the technology underlying, as relevant here (and together, "the patents-in-suit"): U.S. Patent No. 10,458,719 ("the '719 Patent"), which issued from U.S. Patent Application No. 15/000,460 ("the '460 application"), which claimed priority from U.S. Provisional Application No. 62/106,556 ("the '556 Provisional"); U.S. Patent No. 10,670,352, which issued from U.S. Patent Application No. 15/590,621, which claimed priority from U.S. Provisional Application No. 62/340,308 ("the '308 Provisional"); and U.S. Patent No. 10,561,041, which issued from U.S. Patent Application No. 16/137,471, which claimed priority from U.S. Provisional Application No. 62/573,778 ("the '778 Provisional"). *Id.* ¶ 24.

After the provisional applications were granted, Bozorgi and Meinhart submitted a Request for Title Clearance: Disclosure and Record of Invention Form ("Title Clearance") to UCSB around January 20, 2015, essentially seeking a waiver from their obligation to assign these patents to the university. *Id.* ¶¶ 25-32. In the Title Clearance Bozorgi asserted that the '556 Provisional was "developed exclusively" outside of UCSB without using school facilities or funding. *Id.* After an investigation, the Regents denied the Title Clearance because, they allege, Bozorgi's assertions were false and he used UCSB's pulsed laser welder many times to develop the underlying the technology. *Id.* In a letter dated September 20, 2017, the Regents declined to waive their ownership rights and instead asserted sole ownership of the '556 Provisional "and any

application or patent . . . relating to the '556 provisional, including the '460 application." *Id.* ¶ 33.

Bozorgi later conveyed his purported ownership rights of the patents-in-suit to his company, PiMEMS. *Id.* ¶ 35-36. From June 2018 to March 2019, Bozorgi engaged in negotiations with Boyd to acquire PiMEMS. *Id.* ¶ 45. The Regents allege that they did not participate in the negotiations between Bozorgi and Boyd to sell PiMEMS but concede that representatives from their Office of General Counsel and Office of Technology Commercialization communicated with Bozorgi and PiMEMS' counsel during the signing process. *Id.* ¶ 46. The Regents, through a shell corporation, eventually signed the agreement that came out of the negotiations. *See id.* ¶ 90.

Bozorgi and Boyd together drafted the Stock Purchase Agreement ("SPA"), which included representations about PiMEMS' assets and ownership, and appointed Bozorgi as the Stockholders' Representative. *Id.* ¶¶ 47, 50-51. The Regents signed the SPA, selling their shares of PiMEMS to Boyd. *See id.* ¶ 90. In the complaint the Regents agree that the SPA referenced a Company Disclosure Statement ("CDS") that included a "complete and accurate list of all of the Intellectual Property Assets owned, in whole or in part, or licensed by" PiMEMS. *Id.* ¶ 53. The Regents allege that the SPA did not include the '556 Provisional or the patents-in-suit in that list of assets, and that at no time were they aware that the patents-in-suit were part of the assets subject to the SPA. *Id.* ¶ 54-59. They allege that "[t]he '556 provisional, the '778 provisional, and the '308 provisional were not identified or disclosed anywhere in the SPA." *Id.* ¶ 60.

The SPA[1] states that CDS § 3.17(a) "contain[s] a complete and accurate list of all of the Intellectual Property Assets owned, in whole or in part, or licensed by [PiMEMS]" and says that PiMEMS is the "exclusive owner" of "all right, title, and interest in" the listed intellectual property assets. Mot. Ex. A at pdf 19-20. The CDS contains a list of intellectual property purportedly owned by PiMEMS that was transferred to Boyd; the list of assets includes the '460 Application (which stemmed from the '556 Provisional), the '308 Provisional, and the '778

---

[1] Attached to his motion to dismiss, Bozorgi included a copy of the SPA and the CDS. As explained further below, I can consider the contents of these documents at this stage without converting this to a motion for summary judgment, so I include their relevant facts here. *See infra* Discussion.II.

3

Provisional. *Id.* at pdf 101-02. In turn, the SPA states: "There are no facts that would invalidate or render any of the Intellectual Property Assets invalid or unenforceable or in the case of Intellectual Property Assets owned or purported to be owned by [PiMEMS], owned in whole or in part by any third party." *Id.* at pdf 19.

The SPA was signed by the Chief Operating Officer of the University of California, Arthur Guimaraes. *Id.* at pdf 53. Through its shell company the Regents owned 177,000 shares, or 2.74 percent of PiMEMS. Mot. Ex. A at pdf 89. Considering the purchase price of $5 million, *id.* at pdf 9, the Regents received approximately $137 thousand from the sale.

In the ATPC, the Regents allege that they were never informed (1) that Boyd considered the patents-in-suit to be sole property of PiMEMS, (2) that Boyd was seeking sole ownership of them, (3) that Bozorgi had not told Boyd that the Regents did not waive their ownership rights, and (somewhat confusingly) (4) that Bozorgi did not tell the Regents that he had not told Boyd that the Regents did not waive their ownership rights. ATPC ¶¶ 63-67, 76-78, 80. According to the Regents, they justifiably relied on the concealed information to sell their shares in PiMEMS to Boyd. *Id.* ¶ 91, 100, 106, 112. These allegations underlie the Regents' claims for breach of fiduciary duty by Bozorgi as CEO (Count 1) and as Stockholder Representative under the SPA (Count 2), fraudulent inducement (Count 3), and fraudulent concealment (Count 4).

In sum, the Regents now accuse Bozorgi of fraudulently concealing information to induce them to sell their shares in PiMEMS to Boyd, thus also breaching his fiduciary duties owed to them via his role as CEO of PiMEMS and Stockholders' Representative as appointed by the SPA. The fraud stems from Bozorgi allegedly not telling the Regents that (1) PiMEMS considered itself the owner of the patents-in-suit, (2) Boyd was seeking full ownership of the patents, and (3) Bozorgi did not tell Boyd that the Regents asserted full ownership to the patents. Further injury, according to the Regents, stems from Bozorgi not telling *Boyd* that the Regents asserted full ownership to the patents.[2] Due to these injuries, the Regents allege they suffered damages in the

---

[2] To the extent that the Regents assert they were injured by Bozorgi fraudulently concealing material information from *Boyd*, that claim is dismissed because they do not and cannot plead personal injury based on fraudulent inducement of a separate and distinct entity.

4

form of "loss of goodwill, damage to reputation, loss of business opportunities, and defense of litigation." ATPC ¶¶ 93, 102, 108, 114.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814-15 (9th Cir. 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

**DISCUSSION**

**I.     Choice of Law**

The following passage from the SPA is relevant to question about choice of law:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of laws principles thereof; provided, however, that terms of this Agreement as pertains to UC's obligations under the California Public Records Act and/or UC's sovereign immunity with be governed by and construed in accordance with the laws of the State of California, without regard to the conflicts of laws principles thereof.
> For the purpose of any Proceeding instituted with respect to **any claim arising out of or related to this Agreement** or any of the Related Agreements, each party hereby irrevocably submits to the exclusive jurisdiction of any state or (other than with regard to UC) **federal courts having subject matter jurisdiction and located in New York, New York**. . . . THE PARTIES ACKNOWLEDGE AND AGREE THAT, OTHER THAN AS SET FORTH ABOVE WITH REGARD TO UC WHEREBY THE TERMS OF THIS SENTENCE DO NOT APPLY, **THE LAWS OF THE STATE OF CALIFORNIA DO NOT APPLY TO THIS AGREEMENT** OR RELATED AGREEMENTS AND WAIVE ANY RIGHTS THE PARTIES MAY HAVE TO ASSERT THAT THE LAWS OF THE STATE OF CALIFORNIA APPLY.

Mot. Ex. A. at pdf 44 (bolded emphasis added).

Both parties agree that New York law applies to interpreting the SPA and to claims arising from the SPA, and indeed the parties cite New York law to interpret the SPA with respect to damages. *See* Motion to Dismiss Amended Third Party Complaint [Dkt. No. 145] ("Mot.") 11 & n.7; 13-14; Opposition to Motion to Dismiss [Dkt. No. 151] ("Oppo.") 7:15-20.  The parties also both seem to assume that California law applies to the issue of waiving ownership of the patent-in-suit by signing the SPA. *See* Mot. 8:12-14; Oppo. 4:1-9.  The complaint does not clarify the Regents' view on which state's law should apply.  The four claims alleged by the Regents—fraudulent concealment, fraudulent inducement, breach of fiduciary duties as CEO, and breach of fiduciary duties as Shareholder Representative—are state law claims relating directly to the contract at issue, the SPA.  The above quoted section of the SPA confirms that, while some exceptions require applying California law to claims arising from this agreement, New York law applies to the pleaded state law claims arising from and related to the SPA.

**II.    Consideration of the Exhibits Attached to the Motion to Dismiss**

Bozorgi attached several exhibits to his motion to dismiss.  The ones relevant to this

United States District Court
Northern District of California

1  motion, which I consider throughout this order, are the SPA and CDS. *See* Mot. Ex. A. Though
2  the Regents quoted parts of the SPA, they did not attach the SPA or CDS to the ATPC. Generally,
3  I will not consider exhibits attached to a motion to dismiss unless they were attached to the
4  complaint without converting the motion to summary judgment. *See United States v. Ritchie*, 342
5  F.3d 903, 907 (9th Cir. 2003). But review of a motion dismiss may extend beyond "the contents
6  of the complaint" to include "evidence on which the complaint 'necessarily relies' if: (1) the
7  complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no
8  party questions the authenticity of the copy attached to the 12(b)(6) motion.'" *Armstrong v.*
9  *Reynolds*, 22 F.4th 1058, 1064 n.2 (9th Cir. 2022) (quoting *Marder v. Lopez*, 450 F.3d 445, 448
10 (9th Cir. 2006)); *see also Ritchie*, 342 F.3d at 908. And where a document meets those three
11 requirements, courts may consider the document in a motion to dismiss without converting it into
12 a motion for summary judgment. *Armstrong*, 22 F.4th at 1083 n.6 (citing *Marder*, 450 F.3d at
13 448). The Regents do not contest the authenticity or validity of the SPA, or that the complaint
14 refers to it, or that the document is central to their claims. For those reasons, I consider its
15 contents in this order.
16     The Regents assert, however, that they "did not sign or make any representations" as to the
17 CDS. Oppo. 4:26. As the complaint explicitly refers to the CDS and the Regents do not question
18 its authenticity, I take this assertion as the Regents contesting that the CDS is central to their
19 claims. That would imply I cannot consider the CDS at this motion to dismiss stage. But New
20 York State law, which governs the SPA, counsels otherwise.
21     In New York, a document is incorporated by reference into a contract where it "is referred
22 to and described in the instrument as issued so as to identify the referenced document 'beyond all
23 reasonable doubt.'" *Von Ancken v. 7 E. 14 L.L.C.*, 98 N.Y.S.3d 32, 34 (2019) (quoting *Shark Info.*
24 *Svcs. Corp. v. Crum & Forster Com. Ins.*, 634 N.Y.S.2d 700, 701 (1995)). Here, the SPA
25 references the "Company Disclosure Schedule" thirty-nine times, including citing specific sections
26 of the CDS that outline particular limitations, definitions, and—as applicable to this complaint—
27 "a complete and accurate list of all the Intellectual Property Assets owned, in whole or in part, or
28 licensed by [PiMEMS]." Mot. Ex. A. at pdf 19. One section of the SPA even states that "the

Company's Disclosure Schedule *accompanying this Agreement* . . . has been arranged in sections corresponding to the Sections of this Article." *Id.* at pdf 14 (emphasis added). The Regents cannot seriously contest that the CDS was "referred to and described in the" SPA so as to identify the CDS beyond all reasonable doubt. *See Von Ancken*, 98 N.Y.S.3d at 34. Indeed, regardless of whether the Regents reviewed a copy of the CDS, the document was incorporated by reference into the SPA.

And because it was incorporated into the SPA, the Regents agreed to its terms. Under New York law, a signatory to a contract is subject to the terms of the contract even if the signatory never read the contested terms—or never read any of the contract. *See Francica v. Fun World*, 138 Misc. 2d 628, 629-30, 524 N.Y.S.2d 612, 613-14 (1988). Here, then, even if the Regents did not receive a copy of the CDS, they were bound to its terms when they signed the SPA because it was incorporated into the contract. *See id.* Indeed, even if Bozorgi or someone else misrepresented that the patents-in-suit were not included in Boyd's acquisition, negligently crediting that misrepresentation without reading the clear terms of the contract constitutes gross negligence on the part of the Regents. *See id.* ("The conclusiveness of a writing cannot be avoided when the signer negligently credits a misrepresentation. 'If the signer could read the instrument, not to have read it was gross negligence.'" (quoting *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162, 170 N.E. 530, 531 (1930))).

The Regents further contend that they signed the SPA merely as shareholders, not as parties, and they did not sign on as indemnifying stockholders, which together signify they did not intend to be bound by PiMEMS' representations that the patents-in-suit would be sold to Boyd. Oppo. 4:10-26; 5:1-8. According to the Regents, they should only be held accountable for the provisions in Article IV of the SPA, which lay out the representations and warranties "of the stockholders," and not those in Article III containing "PiMEMS' representations and warranties regarding intellectual property ownership." *Id.* 5:1-8.[3] But despite these firm contentions, the Regents do not cite any cases showing that an entity can knowingly and freely sign a contract but

---

[3] At the hearing, the Regents confirmed this is their strongest argument for showing fraudulent concealment and inducement and breach of fiduciary duties.

8

not be bound to its terms, and I could find none. Rather, as noted, New York mandates the opposite: signatories are bound to a contract's terms even if they do not read the contract. *See Francica*, 524 N.Y.S.2d at 613-14.

Therefore, because the CDS was incorporated into the SPA and the Regents agreed to its terms, and because the SPA is central to the Regents' claims, the CDS too is central to the claims and can be considered at this motion to dismiss stage. *See Armstrong*, 22 F.4th at 1064 n.2. The Regents have not questioned the authenticity of the CDS in their papers or at the hearing, and so I consider its contents in reviewing the parties' arguments.

I do not consider any other exhibits attached to the motion to dismiss. *See* Oppo 5:9-25.

### III. Waiver of Ownership and Failure to State a Claim Upon Which Relief Can Be Granted

In response to the Regents' allegations that Bozorgi fraudulently concealed material information, which fraudulently induced them to sell their shares in PiMEMS to Boyd, and that he breached his fiduciary duties as CEO and Stockholder Representative, Bozorgi asserts that the Regents waived any ownership rights to the patents-in-suit when they signed the SPA so their complaint should be dismissed.[4]

Bozorgi frames his waiver argument as an affirmative defense. "Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (citation omitted). But courts may "consider an affirmative defense on a motion to dismiss when there is 'some obvious bar to securing relief on the face of complaint.'" *Id.* (citations omitted). In other words, the complaint may be dismissed if the affirmative defense precludes relief based solely on the allegations in the complaint. *Id.* at 975.

At this stage, Bozorgi's argument about ownership seems correct. Under New York law, a

---

[4] Bozorgi's second argument in his brief, that the Regents "cannot allege damages" concerning the '556 Provisional, essentially argues that by waiving ownership rights to the '556 Provisional and the '460 Application, they also waived their rights to the resulting '760 Patent. *See* Mot. 11:1-13:5. Practically, this is the same ownership waiver argument as presented in Bozorgi's first section, so I analyze the claim together with the other ownership waiver contentions.

9

waiver of a right must be "intentional" and the "intention to relinquish the right . . . must be proved. The evidence must have probative force sufficient to prove that there was in fact an intention to waive the right . . . a voluntary choice not to claim it." *Kapplow v. Abelard Schuman Ltd.*, 193 N.Y.S.2d 931, 933 (1959) (citations omitted). The Regents did not allege the signing was unintentional. And, though the New York state court in *Cohen v. Cohen* used different language in its analysis, it determined that the defendant waived her ownership rights when she signed a written contract clearly indicating the plaintiff owned property and the defendant was "waiv[ing] any right or interest thereto." 96 N.Y.S.3d 312, 313 (2019). That contract stated more clearly than the SPA that the signatory waived her rights, but the rationale applies here: where a party knowingly signs a contract that states (purported) ownership interests, the party waives its right to later object to those ownership interests. *See id.* That standard is met here. The SPA explicitly named the patents-in-suit and clearly stated that the contract transferred their ownership to Boyd. The terms of the SPA show that the Regents waived their rights to ownership of the patents-in-suit by knowingly signing the document. Failing to read the contract they signed is not a defense to being bound to its terms. *See Francica*, 524 N.Y.S.2d at 613-14. The Regents, therefore, waived any claim to ownership of the patents-in-suit.[5]

That said, waiving ownership does not necessarily vitiate the Regents' claims for fraudulent concealment, fraudulent inducement, or breach of fiduciary duties. Even without an ownership interest in the patents-in-suit, the Regents can (and do) argue that Bozorgi fraudulently induced them into selling their shares in PiMEMS to Boyd by fraudulently concealing material information, thus also breaching Bozorgi's fiduciary duties to the Regents as stockholders. None of those claims require proving ownership, so disproving the Regents' ownership does not absolve Bozorgi of responsibility. Bozorgi's affirmative defense, therefore, does not bar the Regents from relief on the face of the complaint and will not be considered at the motion to dismiss stage. *See*

---

[5] At the hearing, I asked the Regents whether they could plead more facts to bolster the complaint. Here, for example, they could theoretically plead facts that their signing was not knowing or intentional. But counsel acknowledged on the record that they have pleaded what they can plead. *See infra*, Discussion.V.

*Monex Credit Co.*, 931 F.3d at 975.

Based on Bozorgi's briefs, I understand his argument to assert that the Regents failed to state a claim for which relief can be granted. Though the briefs frame this is an affirmative defense of waiver, the substance of the argument asserts that because the Regents knowingly signed the SPA—and thus relinquished their ownership rights—they agreed to its terms, which clearly provide for the patents-in-suit to transfer ownership. *See* Mot. 8-10. According to Bozorgi, the Regents cannot now state a claim for fraud or breach of fiduciary duties because the information they say was concealed was in the very documents they signed. *See also* Mot. 13-14.

Under New York law, "[t]o state a cause of action for fraudulent misrepresentation, 'a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" *Gomez-Jimenez v. New York L. Sch.*, 956 N.Y.S.2d 54, 59 (2012) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011)). "A cause of action for fraudulent concealment requires, in addition to the four foregoing elements, an allegation that the defendant had a duty to disclose material information and that it failed to do so." *Id.* (citing *P.T. Bank Cent. Asia, N.Y. Branch v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245 (2003)). And "[t]o establish a prima facie case for breach of fiduciary duty, a plaintiff must allege '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" *Vill. of Kiryas Joel v. Cnty. of Orange*, 43 N.Y.S.3d 51, 57 (2016) (quoting *Varveris v. Zacharakos*, 973 N.Y.S.2d 774, 775 (2013)).

The Regents cannot state a claim for which relief can be granted for fraudulent inducement or concealment because they do not sufficiently plead the first element: there was no "misrepresentation or a material omission of fact." *Gomez-Jimenez*, 956 N.Y.S.2d at 59. The Regents pleaded that the CDS "did not identify or disclose" the patents-in-suit, FATC ¶¶ 55-58, but even at the motion to dismiss stage, I do not have to "accept as true allegations that contradict matters properly subject to judicial note or by exhibit," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)

11

(citation omitted).  The CDS clearly identified the patents-in-suit.  Mot. Ex. A at pdf 101-02. Bozorgi did not misrepresent or omit material information about selling the patents to Boyd because he explicitly included that information in the contract provided to the Regents.

        The Regents' allegations about the CDS could be read to assert that the structure of the agreement was intentionally confusing.  It is true that the SPA frames the transfer of ownership as from PiMEMS to Boyd, while the Regents allege that PiMEMS never owned the patents.  But the Regents' underlying claims are that Bozorgi fraudulently concealed information, thus breaching his fiduciary duties to the Regents and fraudulently inducing them to sell their shares.  On these allegations, coupled with the terms of the SPA and CDS, the Regents do not state a claim for fraud.  Bozorgi may have tried to slip the ownership information into an appendix, but the SPA shows he did not omit it.  And the Regents do not sufficiently plead that Bozorgi misrepresented the ownership interests, other than by (incorrectly) stating that the CDS did not identify the patents-in-suit.  Indeed, the terms of the SPA spell out that PiMEMS asserted full and complete ownership to the listed patents, and that assertion was provided to the Regents when the contract was signed by their Chief Operating Officer.  Based on the facts as pleaded and as represented in the SPA, the Regents cannot assert a claim under their current theories.

        The contents of the SPA and CDS, then, show the Regents did know or should have known that PiMEMS asserted full ownership of the patents-in-suit and that Boyd intended to purchase those ownership rights.  They cannot meet the first element of fraudulent representation or concealment because Bozorgi did not omit or represent a material fact.  To the extent that the Regents argue they were defrauded because Bozorgi did not tell them that he had not told Boyd that the Regents asserted full ownership, *see* FATC ¶¶ 64-66, they did not plead any facts alleging that they relied on *this specific* misrepresentation or omission, or that it caused their injury.  *See Gomez-Jimenez*, 956 N.Y.S.2d at 59.  Therefore, the fraudulent inducement and fraudulent concealment claims are DISMISSED.

        And for the same reasons, the Regents do not state a claim for breach of fiduciary duty because they do not sufficiently allege "misconduct by the defendant." *Vill. of Kiryas*, 43 N.Y.S.3d at 57.  The complaint and SPA contain no facts showing that Bozorgi engaged in

12

1  misconduct, because the SPA contained the information that the Regents now assert Bozorgi

2  withheld in violation of his fiduciary duties.  Therefore, the claims for breach of fiduciary duty are

3  also DISMISSED.

### IV. Waiver of Damages and Release of Claims Against Bozorgi

Bozorgi says the Regents' claims should also be dismissed because the text of the SPA precludes their asserted damages and the release clause waived their rights to bring against Bozorgi any claims arising from the SPA.  Mot. 13:8-15:24.  Because these affirmative defenses present an "obvious bar to securing relief on the face of the complaint," I can consider them at the motion to dismiss stage.  *Monex Credit Co.*, 931 F.3d at 972.  But because I have found that the Regents' claims should be dismissed for failure to state a claim, I need not assess whether these affirmative defenses preclude relief for the Regents.

That said, Bozorgi's arguments are legally compelling, and, importantly, bolster his assertion that the Regents were on notice that the contract sold the underlying patents to Boyd. Bozorgi points out that the SPA bars special, indirect, and consequential damages, which is what the Regents alleged in the complaint.  *See* Mot. 13:8-27.  The Regents contend that they also alleged general damages, Oppo. 6:13-16, but in reviewing the complaint, it appears that the only damages specifically pleaded are those arguably barred by the SPA.  Notably, the complaint does not discuss the $137,000 in profits that the Regents made from the sale of PiMEMS or how that might affect damages.  Bozorgi also points out that the terms of the SPA preclude the Regents from suing Bozorgi for "any and all Liabilities, . . . claims, demands, damages, judgments and causes of action . . . arising direct or indirectly from any act or failure to act . . . , misrepresentation, omission, event, fact, . . . or other matter prior to the Closing."  Mot. Ex. A at pdf 42.   Though the Regents reasonably argue that this term would not apply to instances of fraud, the more relevant point is that the Regents were on notice of the contents of the contract. They agreed to sign away their rights to certain damages and even their rights to sue Bozorgi for certain claims, despite their apparent ongoing dispute with him concerning patent ownership. These broad waivers—in addition to, of course, the terms themselves—put the Regents' signatory

United States District Court
Northern District of California

1 on notice to carefully review and confirm the terms of the contract before signing.[6]  That the

2 signatory did not do so does not provide the Regents a basis to sue Bozorgi for fraud.

### V. Leave to Amend

The Regents did not seek leave to amend their amended complaint should Bozorgi's motion to dismiss be granted.  Though generally courts grant leave to amend even when the party does not request it, *see Lopez*, 203 F.3d at 1127, the determination requires considering, among other things, whether previous amendments were made and whether future amendments would be futile.  *See Moore*, 885 F.2d at 538; *see also Kroessler*, 977 F.3d at 814-15 ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend." (citation omitted)).  At the hearing, I asked counsel for the Regents multiple times whether they could plead additional facts regarding concealment or fraud, or anything else that might save their complaint.   Counsel stated on the record that they have pleaded what they can plead.  Because the Regents have no additional facts to use to state a claim for relief, leave for amendment would be futile.  *See Kroessler*, 977 F.3d at 814-15.  For that reason, the claims are dismissed without leave to amend.

### CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated: October 11, 2022

William H. Orrick
United States District Judge

---

[6] Though not discussed by either party, the SPA contains a provision that says, "Notwithstanding the foregoing or any other provision of this Agreement, neither Shellwater nor The Regents gives any release as to the infringement of any patents of The Regents and neither Shellwater nor The Regents makes a representations as to the infringement of any patents of The Regents." Mot. Ex. A at pdf 43.  Even if the Regents argued this provision applied, it did not allege patent infringement claims in this third-party complaint and so the provision is not relevant.

14